**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JANICE MILLER, ) | CASE NO: 1:09-cv-2948 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | NANCY A. VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION** |
| Defendant. ) | **AND ORDER** |

Plaintiff, Janice Miller, challenges the final decision of the Commissioner of Social Security, Michael J. Astrue (the "Commissioner"), denying her claim for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382 *et seq.* (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the Commissioner.

1

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI on April 26, 2006 alleging a period of disability commencing September 23, 2005. (Tr. 129.) The Commissioner denied her claim initially on August 11, 2006, and upon reconsideration on October 30, 2006. (Tr. 63, 66.) Plaintiff timely filed a request for an administrative hearing on December 18, 2006. (Tr. 69, 70.)

Administrative Law Judge John Murdock ("ALJ") held a video hearing on Plaintiff's claim on November 21, 2008. (Tr. 26.) Plaintiff, her attorney, and a vocational expert, Bruce Holderey, attended the hearing. (Tr. 26.) Plaintiff and Mr. Holderey testified. (Tr. 27.) The ALJ found Plaintiff not disabled under section 1614(a)(3)(A) of the Social Security Act on May 19, 2009. (Tr. 29.) Plaintiff timely appealed the ALJ's decision to the Appeals Council on June 9, 2009 (Tr. 7), and the Appeals Council denied further review on October 26, 2009. (Tr. 1.) Plaintiff subsequently filed a civil action in this Court on December 19, 2009. (Doc. No. 1.)

Plaintiff claims the ALJ erred by failing to (1) find that her Major Depressive Disorder is a severe impairment at step two of his analysis, and (2) properly analyze Plaintiff's fatigue in determining her residual functional capacity ("RFC"). (Pl.'s Br. at 1, 18.) Plaintiff asks the Court to reverse the ALJ's decision and grant her benefits because her alleged fatigue should be considered a disability (Pl.'s Br. at 17-18); or, in the alternative, Plaintiff asks the Court to remand this case for consideration of Plaintiff's Major Depressive Disorder and obesity as they relate to her ability to work (Pl.'s Br. at 14, 18).

2

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on May 18, 1970. (Tr. 31-32.) She was thirty-five years old at the time of her application for social security benefits (Tr. 19), and 39 years old at the time of the ALJ's decision (*See* Tr. 20). She graduated from high school (Tr. 32), and worked on an assembly line and as a bookkeeper in 2005 (Tr. 34). In September 2005 she stopped working as a bookkeeper because of respiratory illness. (Tr. 37-38.) She stopped working on the assembly line because the work was seasonal and temporary. (Tr. at 38.)

### B. Medical Evidence

#### 1. Physical Condition

In October 2005, Plaintiff was seen for a routine physical examination and appeared to be healthy and in no distress. (Tr. 296.) She had no joint abnormalities, full ranges of motion, and a normal gait. (Tr. 297.) Her blood pressure was elevated, and she was obese. (Tr. 296-97.) In December 2005, she showed no signs of lung disease on a computed tomography ("CT") scan. (Tr. 290.) Her pulmonary function tests showed normal ratios, but reduced volumes. (Tr. 294-95.) She had a restrictive pattern on spirometry, and no significant response to bronchodilator therapy. (Tr. 295.)

In February 2006, Shu Que Huang, M.D., a treating physician, reported that Plaintiff had severe asthma for the past fifteen years. (Tr. 298.) She was 5 feet 8 inches tall and weighed 316 pounds. (Tr. 298.) Her neurological functioning was intact, including sensory, motor, and reflex responses. (Tr. 298.) He reported that Plaintiff fatigued with conversation (Tr. 260), recommended treatment at an asthma clinic,

3

opined Plaintiff could not work at present, and reported that Plaintiff had not been able to work since October 2005. (Tr. 299.)

In May 2006, Plaintiff saw Sherrie Williams, M.D., for obstructive sleep apnea ("OSA"), and asthma. (Tr. 304.) Her treatment included a CPAP machine and various inhalers. (Tr. 304.) She also saw Eric Friess, M.D., for a routine follow-up examination, and asked questions about respiratory control and obesity. (Tr. 355-56.) According to Dr. Friess, Plaintiff's general appearance was healthy. (Tr. 385.) She had normal lung functioning, neurological findings, and gait. (Tr. 358.) Plaintiff continued routine care for her respiratory condition. (Tr. 358.)

In August 2006, Franklin D. Krause, M.D., an examining physician, completed pulmonary function studies and evaluated Plaintiff's pulmonary condition. (Tr. 335-41.) Plaintiff's test results suggested a severe restrictive defect, but Dr. Krause noted that her effort was not consistent and not reproducible. (Tr. 337.)

In November 2007, Dr. Sherrie Williams reported that Plaintiff looked "tired and fatigued." (Tr. 424.) In December 2007, Plaintiff underwent pulmonary function studies, which suggested she had a restrictive lung defect and possible small airways disease. (Tr. 426.) Dr. Friess noted during an examination around that time that Plaintiff was still having respiratory symptoms (Tr. 428), and diagnosed "mild intermittent asthma" (Tr. 429). Dr. Friess also listed diagnoses of OSA, hypertension, obesity, and cellulitis. (Tr. 429.)

In July 2008, Plaintiff was evaluated by Dr. Neena James, a rheumatologist. (Tr. 373.) Plaintiff was alert, oriented and in no distress; was obese; and had trace edema in her extremities. (Tr. 375.) She had intact ranges of motion in her joints and neck,

4

and a normal gait.  (Tr. 375.)  Her muscle strength and neurological functioning were intact.  (Tr. 375.)  Knee pain was attributed to osteoarthritis related to obesity.  (Tr. 376-77.)  Plaintiff was encouraged to lose weight through diet modification and exercise.  (Tr. 376-77.)

In January 2008, Plaintiff went to an asthma clinic for management of her breathing problems.  (Tr. 579-81.)  The lung function tests were not interpretable because of Plaintiff's inconsistency and difficulty performing the tests.  (Tr. 580.)  She was given new medications to control her asthma symptoms before they erupted.  (Tr. 580.)

In January 2009, Dr. Krause examined Plaintiff again.  (Tr. 498-520.)  Dr. Krause noted that Plaintiff complained of shortness of breath, hypertension, and psoriasis.  (Tr. 499.)  Plaintiff told Dr. Krause that she quit smoking in 2005 and was hospitalized in 2005 for pneumonia, but had not otherwise been hospitalized for breathing problems.  (Tr. 499.)  On examination, Plaintiff was 67 inches tall and weighed 340 pounds.  (Tr. 500.)  She had no abnormality in her gait or station, and her blood pressure was elevated at 165/110.  (Tr. 500.)  She had no wheezes, rales, or rhonchi; had normal reflexes; had no joint abnormalities; and had no limitation of movement.  (Tr. 500.)  Plaintiff underwent pulmonary function studies which were still not entirely consistent.  (Tr. 500.)  There was at least one adequate effort before and after bronchodilators, which showed a moderate obstructive defect with virtually full correction after bronchodilators.  (Tr. 500.)

Dr. Krause noted that the current studies showed a much better effort by Plaintiff than those performed in 2006, which Dr. Krause described as "virtually

5

useless" due to Plaintiff's poor effort. (Tr. 500.) Dr. Krause diagnosed a history of bronchial asthma with moderate obstruction and virtual full correction after bronchodilators, marked obesity with sleep apnea syndrome, treated with C-PAP, hypertension not well-controlled but uncomplicated, and a history of psoriasis without psoriatic arthritis. (Tr. 500.) Dr. Krause noted that Plaintiff's complaints of dyspnea were out of proportion to her pulmonary function studies. (Tr. 500.)

Dr. Krause completed a physical capacity assessment form. (Tr. 501-06.) Dr. Krause indicated that Plaintiff could lift and carry up to 20 pounds frequently and 50 pounds occasionally (Tr. 501), sit for five hours a day without interruption and six hours total, stand for two hours a day without interruption and six hours total, and walk for two hours a day and three hours total (Tr. 502). She did not need to use a cane to ambulate. (Tr. 502.) She could continuously reach, handle, finger, feel, push, and pull, and continuously operate foot controls with both feet. (Tr. 503.) She could never climb ladders, climb scaffolds, or crawl, and could occasionally climb stairs and ramps, balance, stoop, kneel, and crouch. (Tr. 504.) She could frequently be exposed to unprotected heights, moving machinery, and motor vehicle operation, but she could not tolerate exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. (Tr. 505.)

### 2. Mental Condition

On June 19, 2006, Sally Felker, Ph.D., an examining psychologist acting on behalf of the state agency, reported Plaintiff had never been admitted to a psychiatric hospital as an adult, was prescribed antidepressant medication by her physician, and otherwise was not receiving treatment for depression. (Tr. 307-08.) Dr. Felker noted

6

that Plaintiff's grooming and hygiene were fair, and her manner was extremely subdued. (Tr. 308.)  She was not delusional, paranoid, or grandiose, and did not suffer hallucinations.  (Tr. 309.)  Although she was oriented to person, place, and time, her attention and concentration were restricted.  (Tr. 309.)

Dr. Felker diagnosed Plaintiff with major depression and concluded that Plaintiff had a moderate impairment in her ability to concentrate and relate to others and deal with the general public; a moderate to substantial limitation in her ability to carry out tasks; a substantial limitation in her ability to relate to work peers and supervisors; and a substantial limitation in her ability to tolerate the stresses associated with employment. (Tr. 309-10.)  Dr. Felker assigned a GAF score of 48, representing a serious impairment in her occupational functioning.[1]  (Tr. 310.)

Based upon Dr. Felker's report, the state agency opined that Plaintiff was moderately limited in eleven functional areas:  (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

---

[1] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  *Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

periods; (7) interact appropriately with the general public; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (11) travel in unfamiliar places or use public transportation. (Tr. 312-13.) A Psychiatric Review Technique form was completed documenting moderate limitations in activities of daily living, maintaining social functioning, and in concentration, persistence, and pace. (Tr. 326.)

On July 12, 2006, Nancy McCarthy, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and assessed her mental residual functional capacity. (Tr. 312-29.) Dr. McCarthy concluded that Plaintiff had a severe affective disorder (Tr. 316, 319), and found Plaintiff was capable of simple, repetitive tasks in a work setting that was neither fast paced nor high demand, required only limited contact with the general public, and required adjustment to no more than simple changes (Tr. 314). Dr. McCarthy considered Dr. Felker's findings and Plaintiff's psychological treatment in making these findings. (Tr. 314.) On October 27, 2006, Bruce Goldsmith, Ph.D., reviewed all of the evidence in Plaintiff's file and affirmed Dr. McCarthy's assessment as written. (Tr. 367.)

### C. Hearing Testimony

#### 1. Plaintiff

Plaintiff testified that she has trouble breathing, and that the cold air makes her breathing worse. (Tr. 32.) She used a CPAP machine and a nebulizer to help her breathing, which she relied upon more often around the time of her administrative

8

hearing before the ALJ. (Tr. 33.) She explained that she did not often leave the house without the company of one of her children for fear of suffering an asthma attack in public. (Tr. 45.) She estimated that she was able to walk approximately one-half to one and one-half blocks before she needed to rest. (Tr. 46.) Plaintiff stated that she was fatigued throughout the day, only able to sleep three to four hours a night, and had to take naps two to three times a day for thirty minutes to an hour each. (Tr. 47-48.) She said she was currently taking Wellbutrin, and that she was scheduled to meet a psychotherapist in the near future. (Tr. 48.) She also testified that she does not like to be around people and leave her house. (Tr. 49.)

### 2. Vocational Expert

Bruce Holderey testified as a vocational expert and considered job possibilities for an individual with hypothetical restrictions for a limited range of light work that did not require industrial climbing of ladders, ropes, and scaffolds; occasionally required other climbing and balancing; frequently required stooping, kneeling, crouching, and crawling; and did not require exposure to temperature extremes of hot and cold, wetness, humidity, fumes, odors, gases, hazardous machinery, or heights. (Tr. 51-52.) In response to this hypothetical question, he identified three unskilled, light jobs in the national economy: cashier, housekeeper, and photocopying machine operator. (Tr. 52.) He testified that his testimony was consistent with the information contained in the DOT. (Tr. 53.) Furthermore, he testified that if a person would be off task 20% of the day, then there would be no jobs available for that individual to perform. (Tr. 53.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she

establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does

10

prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g); 20 C.F.R. § 404.1560(c).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 24, 2006, the application date.

2. The claimant has the following severe impairments: obesity, asthma, obstructive sleep apnea (OSA), and hypertension.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform no more than light work . . . that never requires industrial climbing (i.e. ladders, ropes, or scaffolds); that does not require more than occasional climbing or balancing; that does not require more than frequent stooping, kneeling, crouching, or crawling; that avoids exposure to extremes of cold and heat, wet and humidity, and fumes, odors, and gases; and that avoids exposure to hazardous machinery and heights.

5. The claimant has no past relevant work.

6. The claimant was born on May 18, 1970 and was 35 years old, which is defined as a younger individual age 18 - 49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

11

>   9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
>   10. The claimant has not been under a disability, as defined in the Social Security Act, since April 24, 2006, the date the application was filed.

(Tr. 13-20.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. Heston v. Comm'r of Social Security, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. Id. However, the court "do[es] not review the evidence *de novo*, make credibility determinations nor weigh the evidence." Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

"The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." White v. Comm'r of Soc. Sec., 572 F.3d 272, 281 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.2d at 681.

12

### B. The ALJ Did Not Err by Not Characterizing Plaintiff's Major Depressive Disorder as a Severe Impairment.

At step two of an ALJ's analysis of disability, a claimant will be found not disabled, and the ALJ's analysis will proceed to step three, if the claimant does not have a severe, medically determinable physical or mental impairment that meets the duration requirement in C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement.  C.F.R. § 404.1520(a)(4)(ii); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009).  The determination of severity at the second step is "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862; *Anthony*, 266 F. App'x at 457; *accord* C.F.R. § 416.920a((d)(1) (regarding evaluation of mental impairments).  The goal of the test is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).

Plaintiff seeks remand because the the ALJ allegedly failed to properly determine that Plaintiff's Major Depressive Disorder was a severe impairment at step two of the ALJ's analysis.  The Court finds that remand is inappropriate for two reasons:  (1) the ALJ did not err in his analysis; and (2) even if he did err, his failure would not be grounds for remand.

13

### 1. The ALJ's Analysis and Conclusion That Plaintiff's Major Depressive Disorder Is Not a Severe Impairment Were Not Erroneous, and Are Supported by Substantial Evidence.

The severity of a medically determinable mental impairment is evaluated based on how it affects a claimant's ability to function in four broad categories:  (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation.  C.F.R. 416.920a(c)(3).  If an adjudicator rates the impairment in the first three categories as "none" or "mild," and rates the impairment in the fourth category as "none," the impairment will generally be found not severe.  C.F.R. 416.920a(d)(1).

Here, the ALJ recognized Plaintiff's Major Depressive Disorder as a medically determinable mental impairment, but found it "causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area."  (Tr. 14.)  Therefore, the ALJ determined that Plaintiff's Major Depressive Disorder was not a severe impairment.  (Tr. 14.)

The ALJ found the alleged severity of Plaintiff's depression unsupported by the record.  (Tr. 18-19.)  The ALJ found that the "record establishes that the claimant is fully capable of leaving her home and interacting with others."  (Tr. 14.)  He found that "[t]he claimant has never required mental health treatment."  (Tr. 14.)  Although "[a]t the hearing, she testified that she spoke with her doctor about starting this type of treatment, . . . as recently as September 2008, she was telling her medical providers that she did not want such treatment."  (Tr. 14.)  The ALJ further found a "lack of any significant complaints by the claimant to her medical providers concerning symptoms related to her depression."  (Tr. 14.)  And, although the state agency consultative

14

examinations reported depression, the ALJ did not give these assessments great weight because they were not based on "any supporting documentation in claimant's medical records." (Tr. 14.)

The Court finds the ALJ's analysis adequate, and that the evidence upon which the ALJ relied to conclude that Plaintiff's Major Depressive Disorder was not a severe impairment is supported by substantial evidence.

> **2. When at Least One Impairment Is Found to Be Severe at Step Two, Failure to Find Other Impairments Severe at Step Two Is Harmless Error.**

Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two would be only harmless error. *Anthony*, 266 F. App'x at 457 (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). However, all of a claimant's impairments, severe and not severe, must also be considered at every subsequent step of the sequential evaluation process. *See* C.F.R. § 404.1529(d); C.F.R. §§ 416.920(d).

Here, the ALJ found that Plaintiff suffered the following severe impairments at step two of his analysis: obesity, asthma, OSA, and hypertension. (Tr. 13.) Upon these findings, Plaintiff cleared step two of the analysis. *See Anthony*, 266 F. App'x at 457. The fact that Plaintiff's Major Depressive Disorder was not deemed a severe impairment at step two would be, at most, harmless error. *See id.* (citing *Maziars*, 837 F.2d at 244). Plaintiff does not argue that the ALJ's analysis of Plaintiff's Major Depressive Disorder was deficient in any other manner, and fails to articulate how this impairment should have affected the ALJ's RFC determination. Therefore, remand is

15

inappropriate.  See id.

### C. The ALJ Did Not Err in His Analysis of Plaintiff's Fatigue When Determining Plaintiff's Residual Functional Capacity.

RFC is an indication of a claimant's work related abilities despite her limitations. *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.

Plaintiff cited her obstructive sleep apnea, use of a CPAP machine, shortness of breath, being easily winded, trouble sleeping, and obesity as evidence supporting her complaints of fatigue.  (Pl.'s Br. at 16-17.)  She does not explain, however, in what way the ALJ's analysis was deficient.  Rather, Plaintiff only argues that the record evidence supports the conclusion that she suffers disabling fatigue.  (Pl.'s Br. at 14, 16-17.)  This argument is unpersuasive.  An ALJ's decision must be upheld if it is supported by substantial evidence, *even if substantial evidence supports a contrary conclusion.* White, 572 F.3d at 281.  As explained below, the Court finds that the ALJ adequately analyzed Plaintiff's fatigue, and that his decision is supported by substantial evidence.

The ALJ recognized Plaintiff's complaints of "significant breathing problems, with fatigue and reduced mobility."  (Tr. 16.)  The ALJ recognized her complaints of "excessive napping and significant daytime somnolence because of her inability to sleep."  (Tr. 18.)  The ALJ also recognized that Plaintiff was obese.  (Tr. 13, 15, 18.)

16

The ALJ expressly stated that he "considered *all symptoms* and the extent to which *these symptoms* can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p."  (Tr. 16 (emphasis added).)  Ultimately, the ALJ found "no indication that [Plaintiff] ever complained of such extreme limitations," caused by her allegedly disabling fatigue, "nor have her medical providers seen fit to significantly alter her treatment regimen" to address such fatigue.  (Tr. 18.)

Although Plaintiff claimed that she lost her job at the alleged onset date of her disability because she was hospitalized after a severe asthma attack, she "failed to provide documentation of this hospitalization." (Tr. 16.)  The ALJ observed that Plaintiff's "treatment records for her asthma throughout the time period under consideration remain[ed] conservative and routine." (Tr. 17.)  And "even though the claimant's asthma ha[d] at times been described as persistent or severe, physical examinations remain[ed] relatively unremarkable." (Tr. 17, *citing* Ex. 12F/2, 18F/46, 23F.)

The ALJ noted that Plaintiff's OSA was "stable" with use of the CPAP most nights for four to eight hours, except when she had an upper respiratory infection.  (Tr. 18, *citing* Ex. 12F/2.)  Although Plaintiff complained that she struggled with effectively using her CPAP machine (Tr. 47), her medical providers addressed this issue and educated her on its proper, effective use (Tr. 18, *citing* Ex. 18F/50, 88, 92).  Moreover, the record indicated that Plaintiff maintained a household for her school-aged children (Tr. 47), could perform household chores (Tr. 48), and walked a mile-and-a-half to the grocery store (with occasional stops for breath and rest) (Tr. 50).

The ALJ considered Plaintiff's fatigue insofar as to limit her work to light exertion and restrict her exposure to hazardous machinery and heights. (Tr. 18.) But the ALJ did not find Plaintiff's "testimony persuasive in limiting her further than determined . . . without some corroboration [of disabling fatigue] in her treatment records." (Tr. 17-18.)

Plaintiff argues that the ALJ's analysis of her fatigue was deficient because the ALJ failed to consider Plaintiff's obesity as it relates to her fatigue and overall RFC. (Pl.'s Br. at 18.) This argument is not persuasive. The ALJ *did* consider Plaintiff's obesity in making his RFC determination. (*See* Tr. 13, 15, 18.) He stated "I have considered the effects of the claimant's obesity in reducing her functional capacity pursuant to Social Security Ruling 02-01p." (Tr. 15.) He then *explained* his consideration of her obesity in his fourth finding. (Tr. 18.)

The ALJ recognized that Plaintiff's complaints of diffuse joint pain, mild crepitus in her knees, and mild edema reasonably could be related to her obesity. (Tr. 18.) In light of her obesity, he found her limited to light work not involving climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 18.) However, evidence of a full range of motion, unremarkable physical examination, normal gait, normal sensation, and normal muscle strength militated against reducing her functional capacity further. (Tr. 18.)

Plaintiff argues that, although her "obesity by itself may not be disabling . . . once it is considered in combination with the respiratory problems and the OSA, the effect that the obesity has on fatigue must be thoroughly analyzed." (Pl.'s Br. at 18.) The ALJ's decision indicates, however, that the ALJ *did* thoroughly analyzed Plaintiff's obesity, alone and in relation to her other impairments.

The ALJ thoroughly analyzed Plaintiff's medical records and canvassed all of Plaintiff's impairments. He found that Plaintiff "does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments." (Tr. 15 (emphasis added).) He determined Plaintiff's RFC "[a]fter consideration of the *whole* record." (Tr. 15 (emphasis added).) And he made his RFC finding after considering "*all symptoms* and the extent to which *these symptoms* can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 16 (emphasis added).)

"The fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered." *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). In other words, the extensiveness of the ALJ analysis, in light of his summary statements that he considered symptoms and impairments plurally and in combination, support the conclusion that the ALJ considered Plaintiff's obesity in combination with Plaintiff's other impairments. *See id.* "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.*

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

                                            s/ *Nancy A. Vecchiarelli*
                                            U.S. Magistrate Judge

Date: August 27, 2010